Maoism, special judge, delivered the opinion of the court. This was an action instituted by the bank against the defendants; in the circuit court of Pulaski county, at the November term, 1843, upon Crease’s bond as cashier of the principal bank at Little Rock, and it was assigned for a breach of the condition of the bond, that he, as such cashier, on the 31st day of March, 1843, paid to the President, teller, discount clerk, and retained for himself, for their respective services as officers of the bank from the first to the thirty; first day of March, 1843, inclusive, the aggregate sum of three hundred and seventy five dollars in specie, and averred that such officers were not entitled to receive the payment of their salaries in specie," but in Arkansas bank paper at par. The allegations contained in the breach, so far as they relate to the amount paid the President of the bank, or that retained by tho cashier himself, show no violation whatever of the condition of the cashier’s bond. By an act of the legislature, passed the 22d of Dec., 1840, the salary of the President of the principal bank was fixed at seven hundred dollars; the cashier’s at one thousand, eight hundred dollars; and the President and directors were authorized to appropriate the sum of two thousand dollars per annum for the employment of clerks and teller. The salaries of these officers were thus fixed by the legislature, payable in dollars; which legally Means gold or silver; and for services rendered under this act, as such officers of the bank, they acquired the constitutional right to demand, and receive in payment, gold or silver, and could not lawfully be compelled to accept' the depreciated paper of the banks of this State. A different position than this, we apprehend, would lead to dangerous consequences, as it would sanction a violation of the.constitution of the country, disregard the inviolability of contracts, and alienate that confidence in our free institutions, so necessary for their maintenance, as well as for the permanency of the government itself. The rights of these officers, in this view, is in no wise affected by the act of the legislature passed in. 1843, placing the bank in liquidation, and which took effect on the 10th day of February of that year. The 28th section of that act shows that it was intended only as a limitation and modification of the charter of the bank for the purpose of liquidating its affairs. It left the directors of the principal bank and the branches, as well as all the other officers of the bank in full possession of all the powers, privileges and rights which they acquired under the charter and the several acts of the legislature amendatory thereto, subject to the restrictions, limitations .'and modifications contained in the act of liquidation. That did no.t, and was never designed to affect, or in an)r manner impair the private rights of any of the officers of the principal bank, or of its branches; nor did it in any manner change or alter the salaries of those officers. All the powers and privileges, which the several boards of directors were authorized to exercise before the passage of this act, and which were not prohibited by it,' they could still exercise until their official jjowers were determined by the surrem der of the assets of the bank to their successors: — the receivers appointed by the legislature. Until the happening of that event, the board of directors of the principal bank possessed the power under the act of 1840 to appoint clerks and a teller, fix their compensation at any sum not exceeding in the aggregate two thousand dollars per annum, and cause the same to be paid them by, the cashier without restriction as to the kind of funds. This is what was done in the case of the clerk and teller. The directors did not in that particular exceed the scope of their authority, and, therefore, the payment made by the cashier to those officers under the resolution of the board of directors was lawful. We see no error in the judgment of the circuit court, and the .same is affirmed.